1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

UNITED STATES OF AMERICA,

Plaintiff,

8

v.

9
10

GILBERT SCOTT MARTINEZ,

Defendant.

11

Case No. 19-cr-00662-JSW-1

**ORDER DENYING MOTION TO SUPPRESS AND CONTINUING TO JUNE 23, 2020 FOR STATUS**

Re: Dkt. No. 22

United States District Court
Northern District of California

12
13

Now before the Court for consideration is the motion to suppress filed by Defendant

14

Gilbert Scott Martinez ("Martinez").  The Court has considered the parties' papers, relevant legal

15

authority, and the record in this case, and the Court concludes the motion can be resolved without

16

oral argument or an evidentiary hearing.[1]  The Court VACATES the motion hearing scheduled for

17

June 16, 2020 and it DENIES the motion to suppress.

18

**BACKGROUND**

19

On December 5, 2019, the Government charged Martinez with three counts of bank fraud

20

in violation of 18 U.S.C. section 1344.  These charges arise, in part, from evidence discovered

21

during a search of Martinez's residence on Rock Creek Way in Pleasant Hill, California.  The

22

search was conducted on May 10, 2019 pursuant to a warrant issued by the Honorable Kandis A.

23

Westmore on May 9, 2019, and the warrant was supported by an affidavit submitted by United

24

States Secret Service ("Secret Service") Special Agent Daniel Kim ("Agent Kim").  (Dkt. No. 32,

25

Def. Ex. A.)[2]

26
27

[1]      Martinez did not request an evidentiary hearing.

28

[2]      Exhibit A consists of the Application, the Affidavit and its attachments, the Warrant and its

1

United States District Court
Northern District of California

1      Agent Kim has been employed with the Secret Service since October 2016, and he

2   completed a Criminal Investigator Training Program at the Federal Law Enforcement Training

3   Center and a Secret Service Special Agent Training Course at the James J. Rowley Training

4   Center.  He currently works with the Financial Crimes Task Force and also is assigned to the U.S.

5   Marshals Pacific Southwest Regional Fugitive Task Force as a Special Deputy U.S. Marshal.

6   (Affidavit, ¶¶ 1-2.)

7      Agent Kim attested that, in 2010, the Secret Service arrested and subsequently charged

8   Martinez with bank fraud.  Martinez was convicted, sentenced to 90 months imprisonment, and

9   was released from custody on December 15, 2016.  (*Id.*, ¶ 11 (citing *United States v. Martinez*, 11-

10  cr-15-JSW).)  Agent Kim attests that, at some point in June 2017, Martinez contacted Joseph

11  Cartagena, a rapper also known as "Fat Joe" and the president of Sneaker Addict Touring LLC

12  ("Sneaker Addict"), through Cartagena's agent.  Martinez expressed an interest in booking

13  Cartagena for an event in Los Angeles.[3]

14     Cartagena's agent provided Martinez with the mailing address, bank account, and routing

15  number of Sneaker Addict and ACH/wire instructions for advance payment.  (*Id.*, ¶ 12.)  Martinez

16  provided Sneaker Addict with a business check in the amount of $56,000 that was drawn on a

17  Bank of America account under "MTS Investments/The MTS Corp."  However, on June 19, 2017,

18  Iberia Bank received a notification that the check was fraudulent and was returned by Bank of

19  America.[4]  According to Bank of America's investigators the account number on the check was

20  valid, but it belonged to a different business: Ron Baker Chevrolet, a/k/a Cumming Chevrolet,

21  located in National City, California.  Cumming Chevrolet confirmed there had been an

22  unauthorized attempt to deposit the check using its account and routing number.  Martinez did not

23

24  attachments, and the Inventory, and it is Bates numbered GMARTINEZ-000883 through
25  GMARTINEZ-000917.  The Court will either refer to the Affidavit or will cite to specific Bates
    numbers when it references Exhibit A in this Order.

26  [3]     For purposes of this motion, Martinez has not put forth evidence that would contradict the
27  allegations in Agent Kim's affidavit.

28  [4]     Based on the Affidavit, Sneaker Addict held an account at Iberia Bank.  (*See, e.g.,*
    Affidavit, ¶ 14.)

2

1    have authority to write checks for Cumming Chevrolet and did not have permission to use its bank

2    account or routing numbers.  (*Id.*)

3           On June 20, 2017, Iberia Bank received an overnight package from Martinez, which

4    contained a different check in the amount of $56,000 payable to Sneaker Addict.  That check was

5    drawn on a Chase account under the name Optimize Solutions.  Chase investigators determined

6    the account was valid and belonged to a business in New York, Optimize Solutions, LLC, which

7    was owned by an individual named Kyle Freedman.  Martinez contacted Freedman in early 2017

8    to have Optimize Solutions build a mobile application for Martinez's business and, at that time,

9    obtained Optimize Solutions' bank routing and account number.  (*Id.*, ¶ 13.)  Iberia Bank did not

10   process that check based upon suspicion of fraud.  Between September 5, 2018 and September 20,

11   2018, Iberia Bank's security specialist identified eight additional fraudulent checks drawn on

12   Sneaker Addict's account.  Three of those checks were connected to a fraudulent scheme

13   involving the purchase of a home in Fairfield, California.  (*Id.*, ¶¶ 14-15.)  Martinez was not

14   authorized to write checks for Sneaker Addict, and he did not have permission to use its bank

15   account number in any capacity.  (*Id.*, ¶ 14.)

16          Martinez also used, without permission or authorization, one of Optimize Solutions'

17   account numbers and used a fraudulent check to attempt to rent a suite for the Oakland Raiders'

18   2017 football season.  (*Id.*, ¶ 17.)  Freedman also suspected that Martinez had used Optimize

19   Solutions' bank account number to fraudulently open an account with AT&T, which was used to

20   purchase various goods and services between May 30, 2017 and May 18, 2018.  (*Id.*, ¶ 17.)

21          Agent Kim also attested to two incidents in 2017 that involved lease buy-outs on vehicles.

22   In those incidents, Martinez used fraudulent checks drawn on accounts belonging to companies

23   with which he had no affiliation and no permission to use the accounts.  As part of this alleged

24   fraud, Agent Kim attests that Martinez responded to advertisements on Craigslist.com and a

25   mobile application and sent text messages.  In one of those transactions, the check was not

26   identified as fraudulent and the title to the vehicle was released to Martinez.  (*Id.*, ¶¶ 18-23.)

27          In January 2019, Martinez was convicted of vehicle theft and a fraud scheme in Contra

28

United States District Court
Northern District of California

3

1   Costa County Superior Court and was sentenced to 364 days in county jail.[5]  Martinez failed to

2   report to serve that sentence.  After Martinez failed to appear for a restitution hearing, the judge in

3   that case issued a bench warrant for Martinez's arrest.  Agent Kim also attested that there was a

4   federal warrant outstanding for Martinez.  (*Id.*, ¶ 24.)[6]  Martinez remained a fugitive until

5   approximately April 2019, when he posted a video on Instagram that led Agent Kim to discover he

6   was residing at the residence on Rock Creek Way.  Agent Kim also discovered a post on

7   Instagram from December 12, 2017, that suggested Martinez had an account containing just over

8   $900,000 in cryptocurrency.  (*Id.*, ¶¶ 25-26.)

9          Agent Kim attested that part of his training and experience has included interviews with

10   "criminals regarding the means of obtaining, storing and using people's Personal Identifying

11   Information ['PII']."  From those interviews, he has learned that "individuals involved in these

12   crimes often utilize computers, electronic storage devices, email, and telephones to carry out their

13   crimes or coordinate with co-conspirators."  (*Id.*, ¶ 5; *see also id.*, ¶ 8.)  Based on that experience

14   and training, Agent Kim attests to his knowledge about how individuals involved in financial

15   crimes and fraudulent activities conceal evidence of their activities, where such information may

16   be located, including on personal computers and other electronic storage media, and the types of

17   "contraband, evidence, instrumentalities, or fruits of crime" that may be located in such places.

18   This section of Agent Kim's Affidavit does not contain information that is particular to Martinez.

19          Agent Kim also attached a description of Martinez's property, a description of the items to

20   be seized, and a protocol for searching devices or media that store data electronically.  (*Id.*, ¶¶ 27-

21   39, Exs. A-C.)

22          The Court shall address additional facts as necessary in its analysis.

23                                          **ANALYSIS**

24          "The right of the people to be secure in their persons, houses, papers, and effects, against

25   unreasonable searches and seizures shall not be violated...."  U.S. Const. amend IV.  The search at

26

27   [5]     Agent Kim did not clearly state whether this conviction arose out of the activities
described in paragraphs 17 through 23 of his Affidavit.

28   [6]     The undersigned issued that warrant on March 21, 2019.  (Dkt. No. 71.)

United States District Court
Northern District of California

1      issue was conducted pursuant to a warrant, which is presumed to be valid.  *Franks v. Delaware*,

2      438 U.S. 154, 171 (1978).  Pursuant to the Warrant Clause, "no Warrants shall issue, but upon

3      probable cause, supported by Oath or affirmation, and particularly describing the place to be

4      searched, and the persons or things to be seized."  U.S. Const. amend. IV.

5              When determining whether probable cause exists, a magistrate judge considers the "totality

6      of the circumstances" to determine if there is a "fair probability" that a crime has been committed

7      and that "contraband or evidence is located in a particular place[.]"  *Illinois v. Gates*, 462 U.S.

8      213, 230 (1983); *see also United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)

9      (magistrate judge is only required to answer the "commonsense, practical question whether there

10     is 'probable cause' to believe that contraband or evidence is located in a particular place" before

11     issuing a search warrant.") (quoting *Gates*, 462 U.S. at 230).  "A magistrate is entitled to draw

12     reasonable inferences about where evidence is likely to be kept, based on the nature of the

13     evidence and the type of offense."  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir.

14     1986).

15             The Court must afford the Magistrate Judge's decision "great deference", and if the Court

16     determines the Magistrate Judge had a "substantial basis" to conclude the "search would uncover

17     evidence of wrongdoing," suppression is not warranted.  *Gates*, 462 U.S. at 236; *see also United*

18     *States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012) (a court should not overturn a magistrate

19     judge's decision to issue a warrant unless it is clearly erroneous).

20             Martinez does not dispute the information contained in the Affidavit set forth a fair

21     probability that a crime had been committed.  He argues that the warrant was stale and overbroad,

22     and the focus of this argument pertains to the search and seizure of computer equipment and other

23     electronic storage devices.  The Court will address each argument in turn.

24     **A.      The Information in the Warrant is Not Stale.**

25             Martinez argues the warrant was stale because the last incident described in the Affidavit

26     occurred in September 2018, approximately eight months before the warrant issued.  Martinez

27     contends that, as a fugitive who had moved during the time in question, he had a "strong

28     incentive" to get rid of any evidence of his fraudulent activity.  "The mere passage 'of substantial

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    amounts of time is not controlling in a question of staleness,'" especially where electronic

2    evidence is concerned. *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (quoting

3    *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988)); *cf. Gourde*, 440 F.3d at 1071

4    ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on

5    his computer, even if [the defendant] had tried to delete the images."). Instead, a court must

6    consider "the particular facts of the case and the nature of the criminal activity and property

7    sought." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *United States v. Pitts*,

8    6 F.3d 1366, 1369 (9th Cir. 1993)).

9           In *Flores*, the defendant moved to suppress evidence of drug smuggling obtained from her

10   Facebook account, arguing the warrant was stale because the post at issue had been made three

11   months before the government obtained a search warrant. The court rejected the defendant's

12   argument, reasoning that the post had not likely been deleted in the interim, and even if it had been

13   deleted, it "likely could have been recovered." 802 F.3d at 1043. Therefore, "there remained a

14   fair probability that [the defendant's] account would contain evidence at the time it was searched.

15   *Id.*; *see also Gourde*, 440 F.3d at 1071 (court concluded that information was not stale where four

16   months elapsed between shutting down child pornography website and execution of warrant for

17   search of evidence of child pornography on defendant's computers).

18          "[T]raining and experience are factors to be considered," as part of the probable cause

19   determination. *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012). When a

20   declarant relies on those facts, they must "explain the nature of [their] expertise or experience and

21   how it bears upon the facts which prompted" them to search. *Id.* at 1139-40 (quoting 2 Wayne

22   LaFave, Search and Seizure § 3.2(c), at 45 (4th ed. 2004) ("LaFave")). "Conclusory statements

23   and a general claim of experience will not suffice." *Id.* (citing LaFave, § 3.2(c), at 45 and *United*

24   *States v. Thomas*, 211 F.3d 1186, 1189-92 (9th Cir. 2000)). In addition, "if the government

25   presents expert opinion about the behavior of a particular class of persons, for the opinion to have

26   any relevance, the affidavit must lay a foundation which shows that the person subject to the

27   search is a member of the class." *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990).

28          Agent Kim set forth his training and experience investigating financial crimes and how that

1    experience informed his belief that evidence of the alleged crimes would be found in Martinez's

2    home and on Martinez's computers and other electronic storage devices.  Agent Kim also

3    explained that even when information has been deleted from a computer, "lost evidence can often

4    still be recovered from computers or other forms of electronic storage media."  (*See* Affidavit ¶¶,

5    28-35.)  Even if Martinez had a strong incentive to destroy any evidence of the alleged schemes,

6    the Court concludes the information in the Affidavit provided the Magistrate Judge with a

7    substantial basis to conclude that there was a fair probability that information would be in the

8    residence and on computers and other electronic media, notwithstanding the passage of time.

9          A gap in time may not undermine the information contained in the warrant where "'a

10   continuing pattern or other good reasons' suggest that the evidence sought remains in the location

11   to be searched[.]"  *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (quoting *Lacy*, 119

12   F.3d at 746).  Agent Kim included information about Martinez' prior conviction for bank fraud

13   and advised the Magistrate Judge that Martinez had been released from custody in December

14   2016.  (Affidavit, ¶ 11.)  The alleged criminal activity described in the search warrant began in

15   June 2017, continued into 2018, and included a fraud conviction in 2019.

16         In evaluating the totality of the circumstances, a magistrate judge can consider reasonable

17   inferences to determine whether an affidavit sets forth probable cause to believe that evidence of

18   crime will be found at a particular location.  *See United States v. Kelley*, 482 F.3d 1047, 1050 (9th

19   Cir. 2007).  Although Martinez had been in fugitive status following his most recent conviction,

20   based on the information about his prior charge and the continuing criminal conduct, it would

21   have been reasonable for the Magistrate Judge to infer that evidence of that criminal activity

22   would be found in Martinez's home.  In addition, although Agent Kim's description of his

23   experience with the *modus operandi* of individuals involved in fraudulent financial crimes is not

24   directed specifically to Martinez, the Court also concludes there was a substantial basis for the

25   Magistrate Judge to conclude there was a nexus between that general information and Martinez.

26         Based on the totality of the circumstances, and according the deference due to the

27   Magistrate Judge's determination, the Court concludes the warrant was supported by probable

28   cause.  Accordingly, the Court DENIES the motion on that basis.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

**B.      The Warrant Is Not Overbroad.**

Martinez also argues the warrant was overbroad because "it authorized the seizure of all electronic data without time limitation and regardless of ownership." (Mot. at 4:5-6.)[7]  "The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized."  *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006).  "In order for a search to be reasonable, the warrant must be specific."  *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991); *see also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009).  The "specificity" requirement consists of "'two aspects': 'particularity and breadth.... Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'"  *SDI Future Health*, 568 F.3d at 702 (quoting *In re Grand Jury Subpoenas*, 926 F.2d at 856-57).

To determine if a warrant is sufficiently particular, the Court considers "the particular circumstances and the nature of the evidence sought."  *Adjani*, 452 F.3d at 1147.  "[I]f a more precise description of the items subject to seizure is not possible," the fact that a warrant "describes generic items does not necessarily render it invalid."  *Id.* at 1147-48 (internal quotations and citations omitted).  There are several factors a court may consider to determine whether a warrant is overbroad:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id.* at 1148 (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)); *accord Flores*,

---

[7]      Attachment B to the Affidavit lists eight categories of items to be seized (Attachment B, ¶¶ 1-7, 10.)  Martinez's argument on overbreadth focuses solely on Paragraph 7, which refers to "Any and all Electronic Storage Devices capable of storing electronic data," and the Court has limited its analysis to that paragraph.

8

1    802 F.3d at 1044.

2    A warrant is overbroad if it fails to establish "probable cause to seize the particular thing[s]

3    named in the warrant," and courts will invalidate warrants "authorizing a search which exceeded

4    the scope of the probable cause shown in the affidavit." *In re Grand Jury Subpoenas*, 926 F.2d at

5    857.  For example, in the *SDI Future Health* case, the court found that certain categories of items

6    to be seized were overly broad, because the warrant failed "to describe the crimes and individuals

7    under investigation" and, as a result, "provided the search team with discretion to seize records

8    wholly unrelated to the" defendants' finances.  568 F.3d at 705.

9    The Ninth Circuit also concluded a warrant was overbroad in *Center Art Galleries-Hawaii,*

10   *Inc. v. United States*, 875 F.2d 747, 750-51 (9th Cir. 1989).  In that case, the affidavit provided

11   probable cause to search for evidence of mail and wire fraud involving the sale of forged Salvador

12   Dali artwork.  However, the court found that the "government ... failed to limit the warrants to

13   items pertaining to the sale of Dali artwork despite the total absence of any evidence of criminal

14   activity unrelated to Dali." *Id.* at 750.  Because approximately 80% of the plaintiff's business

15   concerned non-Dali art, the court also concluded that the "permeated-by-fraud" theory would not

16   justify such a broad seizure of documents. *Id.*; *see also United States v. Kow*, 58 F.3d 423, 427

17   (9th Cir. 1995) (generalized seizure of business records was not justified where affidavit failed to

18   establish that business was permeated by fraud and "none of the ... categories of seizable

19   documents was limited by reference to any alleged criminal activity").

20   Agent Kim attested that, as part of the activities giving rise to probable cause, Martinez

21   responded to advertisements on Craigslist and on a mobile software application and that Martinez

22   sent and received text messages.  Agent Kim also stated that Martinez created a counterfeit check.

23   (Affidavit, ¶¶ 20, 22-23.)  Those facts, in combination with information Agent Kim provided

24   about how individuals who engage in financial crimes store information, would have given the

25   Magistrate Judge a reasonable basis to conclude that evidence of criminal activity would be found

26   on computers and other electronic storage media.  Therefore, those facts demonstrate probable

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    cause to seize those types of items.[8]

2    Martinez argues the warrant is overbroad because it contains no temporal limits, which

3    pertains whether the warrant described with particularity the items to be seized. *See Kow*, 58 F.3d

4    at 427. Although Agent Kim's Affidavit sets forth a time frame surrounding the alleged criminal

5    activity, Attachment B to his Affidavit and the warrant does not include that time frame. In

6    addition, Paragraph 7 of Attachment B does not explicitly reference the crimes at issue.[9]

7    However, unlike the warrants at issue in *SDI Future Health* and *Kow*, the remaining

8    paragraphs of Attachment B do specify that the types of evidence to be seized relate to bank fraud

9    and access device fraud, and Martinez has not argued those paragraphs are overbroad. In addition,

10   Paragraph 3 refers to Martinez and to entities that were alleged victims of those crimes. The

11   reference to the "specific illegal activity" at issue would "provide substantive guidance for the

12   [officers'] exercise of discretion in executing the warrant." *Spilotro*, 800 F.2d at 964. The

13   Affidavit and the Warrant also included a "Protocol for Searching Devices or Media that Store

14   Data Electronically." (Affidavit, Att. C; Warrant, Att. C.) Those Protocols would also "provid[e]

15   executing officers with sufficient objective standards for segregating responsive material from"

16   non-responsive material on Martinez's computers and electronic media. *See Flores*, 802 F.3d at

17   1044 (finding that procedures for electronically stored information attached to warrant suggested

18   warrant was not overbroad). Therefore, although Attachment B did not include a specific time

19   period, the Court concludes that does not render it facially overbroad.

20   Martinez also argues the warrant is overbroad because it did not place any limits on

21   ownership of computers or electronic storage devices. The Court does not find this argument

22

23   [8] For that reason, the Court finds *United States v. Griffith*, on which Martinez relies, to be
     distinguishable on its facts. 867 F.3d 1265 (D.C. Cir. 2017). In *Griffiths*, the court determined the

24   facts in the affidavit supporting a search warrant did not contain sufficient facts to show that the
     defendant owned a cell phone – the property to be seized – or that evidence related to the criminal

25   activity at issue – a homicide – would be found on a cell phone. 867 F.3d at 1270.

26   [9] Where a warrant is overbroad on its face, an affidavit may serve to cure that defect if: (1) it
     is attached to or accompanies the warrant at the time of the search; and, (2) the warrant sufficiently

27   incorporates the affidavit. *United States v. Vesikuru*, 314 F.3d 1116, 1120-21 & n.4 (9th Cir.
     2002). The Government has not provided any evidence that Agent Kim's Affidavit was attached

28   to the warrant, although the language in the warrant is broad enough to suggest it was incorporated
     by reference.

1   persuasive.  In *Adjani,* the Ninth Circuit stated it had "never held that agents may establish

2   probable cause to search only those items owned or possessed by the criminal suspect.  The law is

3   to the contrary."  452 F.3d at 1146.  Rather, "[t]he critical element in a reasonable search is not

4   that the owner of the property is suspected of crime but that there is reasonable cause to believe

5   that the specific 'things' to be searched for and seized are located on the property to which entry is

6   sought."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

7           Accordingly, the Court concludes that the warrant is not overbroad, and it DENIES the

8   motion to suppress on that basis as well.

9   **C.      Good Faith Exception.**

10          In the alternative, if the warrant could be considered overbroad, the Court concludes the

11  Government has met its burden to show suppression is not warranted based on the good faith

12  exception set forth in *United States v. Leon*, 468 U.S. 897, 916 (1984).  That exception is satisfied

13  if an officer acts 'in objectively reasonable reliance' on the warrant."  *United States v. Underwood*,

14  725 F.3d 1076, 1085 (9th Cir. 2013) (quoting *Leon*, 468 U.S. at 922).

15          The good faith exception is not available if an affidavit is "so lacking in indicia of probable

16  cause as to render official belief in its existence entirely unreasonable" or "where the warrant is

17  'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be

18  seized—that the executing officers cannot reasonably presume it to be valid."  *Id.* (quoting *Leon*,

19  468 U.S. at 923).  The Court finds the Affidavit is not the type of "bare bones" affidavit for which

20  the *Leon* good faith exception would not apply.  *See, e.g., Underwood*, 725 F.3d at 1086 (finding

21  good faith exception did not apply where, inter alia, affidavit contained no facts to support a

22  conclusion that defendant was a drug trafficker and, therefore, affiant's opinions about drug

23  traffickers in general could not be used to support finding of probable cause).  The Court also

24  concludes that although the warrant did not include a time limit in Attachment B, in light of the

25  inclusion of the types of crimes at issue, it is not so facially deficient in its particularity that it

26  would have been unreasonable for an executing officer to presume the warrant was valid.

27  //

28  //

United States District Court
Northern District of California

11

**CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to suppress, and it CONTINUES this matter to June 23, 2020 at 1:15 p.m. for a telephonic status conference with counsel to discuss scheduling.  The parties shall dial by no later than 1:00 p.m., and the access number is 1-888-684-8825 (password 8583698#).  If the parties believe the time between the date of this Order and the date of the status conference should be excluded from the Speedy Trial Act calculation, they shall submit a stipulation and proposed order to the Court by June 16, 2020.

If Defendant is not willing to waive his appearance at this status conference, the parties shall meet and confer and submit a stipulation and proposed order setting forth alternative dates and times for a telephonic or video appearance by 12:00 p.m. on June 16, 2020.

**IT IS SO ORDERED.**

Dated: June 8, 2020

_____

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12